UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KENISHA MOORE,

Plaintiff,

-against-

COUNTY OF NASSAU, ET AL.,

Defendant(s).

**MEMORANDUM & ORDER**
2:18-cv-04786-ST

**TISCIONE, United States Magistrate Judge:**

Before this Court is Kenisha Moore's ("Plaintiff") motion for a new trial pursuant to Rule 59. Because the jury's findings were not egregious, the motion is denied.

**DISCUSSION**

This Court presumes familiarity with the facts. Nevertheless, a summary of facts pertinent to the instant motion is offered below. On August 25, 2017, Plaintiff was being transported from the Nassau County District Court to the Nassau County Correctional Center. Plaintiff's wrists were cuffed. The Correctional Officer—Joann Arena—did not buckle Plaintiff's seat belt. As revealed through testimony, it is not common practice for Correctional Officers to buckle inmates' seat belts due to the high risk of being attacked.

As the transport van pulled away, the security fence closed and struck the van. Correctional Officer Jeffrey Moody was driving. Plaintiff slid forward on her seat but did not fall. Plaintiff and the other inmates were then transferred to a second van. At some point in the drive, the van stopped short and Plaintiff fell from her seat, sustaining injury. Plaintiff sued for negligence.

The jury issued a defense verdict, finding the Correctional Officers and Nassau County were not negligent. *See* Verdict, ECF No. 111-10. Plaintiff now seeks a new trial pursuant to Rule 59(a). *See* Motion for New Trial, ECF No. 111.

"A grant of a new trial on the ground that the verdict was against the weight of the evidence is appropriate if the jury has reached a seriously erroneous result or the verdict is a miscarriage of

Case: 26-2602, 09/15/2026, DktEntry: 2.1, Page 2 of 6

justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634 (2d Cir. 2002) (citation and quotations omitted) (cleaned up). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should *only* grant such a motion when the jury's verdict is egregious." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (emphasis added).

Indeed, while "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner[,]" overturning a jury verdict is atypical. *Id*. To be sure, "granting of a new trial is an extraordinary relief, and one that is properly granted only upon a showing of exceptional circumstances." *Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 174 (E.D.N.Y. 2012) (citation and quotations omitted). While deciding to grant a new trial is within the trial court's discretion, we should "abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result." *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978); *see also ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014) ("[A] decision is against the weight of the evidence if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice.").

In deciding a motion for new trial, "[i]t is inherent in the proposition that the district judge may weigh the evidence that the judge will consider the credibility of witnesses." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998). But "[t]his is not to say that district judge may freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury[.]" *Id*. Indeed "[a] jury's credibility assessments are entitled to deference[.]" *Id*. at 104 –105. Controlling here, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992).

Case: 26-2602, 09/15/2026, DktEntry: 2.1, Page 3 of 6

In sum, courts generally avoid veering into witness credibility when determining a motion for a new trial.

However, while this Court cannot—and will not—wade into the province of the Jury, there are potential credibility issues that *could* have influenced the jury's verdict, and certainly give weight to its ultimate conclusion that Plaintiff did not sustain her burden. Such is paramount here, as Plaintiff's case in chief relied heavily on her own testimony.

The first is the issue with Plaintiff's alleged inability to buckle her own seat belt. Plaintiff was handcuffed prior to being placed in the van. Tr. 352:5-13. She testified the handcuffs were tight on her wrists and limited her movement. *Id*. 353:2-6. Plaintiff repeatedly requested for a correctional officer to buckle her seat belt, but they refused. *Id*. 363:9-10. On cross examination, Plaintiff testified she was able to move her arms up and down, left to right, and her fingers and palms were not restrained. *Id*. 400:2-23. Notably, the seat belts in the van are lap belts, i.e., they go across your lap—not your chest—and require less mobility to buckle. *Id*. 356:1-3. As such, there is a good chance Plaintiff could have buckled her own seat belt, an argument that was repeatedly highlighted by the defense and casts doubt on Plaintiff's testimony that she was unable to do so.

Further, during Officer Arena's cross examination, she testified correctional officers never go into the van to buckle inmates seat belt because of safety concerns. *Id*. 164:15-18. Specifically, Officer Arena testified:

> It's a very small compartment. . . . You cannot stand up straight in this compartment. So I'd have to be hunched over and it's basically you are in their personal space and it's too close to somebody where if you have several inmates in there that you could be physically attacked. So it's dangerous for us to actually go into this compartment and seat belt everybody. There are seat belts in there. That you can use them if they choose and it's easy to do.

*Id*. 164:20-165:6. In other words, a Correctional Officers would risk their personal safety by climbing into a van with inmates to secure a seat belt and had good reason to refuse Plaintiff's request.

The second issue is the severity of Plaintiff's injury.

After the van hit the security gate, the inmates were transferred to a second van. *Id*. 362:1-10. Again, Plaintiff claimed she was unable to apply her own seat belt, and her request for the Correctional Officers to assist her fell on deaf ears.

While driving in the second van, Plaintiff claims the van made an abrupt stop and fell from her seat. *Id*. 364:6-11. Plaintiff testified she fell on her knees and it "felt like shattered glass." *Id*. 365:3-7. Plaintiff testified, "I could not move my wrist it was really tight, excruciating, I was in pain. I was screaming and crying." *Id*. 365:12-14.

Plaintiff described the pain in her legs and arms as excruciating. *Id*. 367:5. Plaintiff testified that she requested medical treatment when being taken out of the van, but her requests were denied. *Id*. 368:2-10. When Plaintiff was asked how difficult it was for her to walk after she fell, she stated "I wouldn't say that it was easy and I'm not going to say that it's hard either[.]" 370:4-5.

Plaintiff was processed when she arrived at the Nassau County Correctional Facility, and she bailed herself out some 45 minutes later. *Id*. 374:1-15.

What happened next raises another credibility issue. After describing her pain as excruciating and analogizing her knee to broken glass, Plaintiff walked 25 minutes to the Nassau University Medical Center. *Id*. 374:12-19. This Court takes judicial notice this is a 1.2-mile walk. *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 265 (S.D.N.Y. 2014) (taking judicial notice of distance between locations using online mapping service); *Brisco v. Ercole*, 565 F.3d 80, 83 (2d Cir. 2009) (same). Plaintiff walked this distance even though she "could barely bend" her knee. Tr.

381:7. There is a distinct possibility the Jury found Plaintiff's alleged injury inconsistent with her ability to walk over a mile to the hospital after the incident.

The case Plaintiff relies on is also distinguishable. In *Lombardo v. Columbia Dentoform Corp.*, the plaintiff won a $350,000 jury verdict for termination based on age discrimination. 103 F.R.D. 630 (S.D.N.Y. 1984). But the defendant provided testimony from seven co-workers that the plaintiff utilized a host of racial epithets when speaking to his employees. *Id.* at 634. The plaintiff had a meeting with a senior manager who informed him his position would be in jeopardy if his misconduct continued. Further, the plaintiff admitted drinking on the job on at least one occasion. Suffice to say, the defendant had cause for termination and the verdict was egregious.

Such an unsurmountable pantheon of adverse evidence is far and distinct from this case. Here, the trial turned almost entirely on Plaintiff's testimony. There was no objective evidence the Jury failed to consider, and "in a case with little objective evidence on either side, the jury was well within its rights to credit the testimony of defendants' witnesses over plaintiff's." *Young v. Cabrera*, 2023 WL 1785526, at *7 (E.D.N.Y. Feb. 6, 2023).

To be clear, this Court is not making a credibility determination on the veracity of the Plaintiff's testimony. But there was room for the Jury to find: (1) the Correctional Officers were rightfully concerned about their own safety when refusing to buckle Plaintiff's seat belt: (2) Plaintiff was capable of buckling her own seat belt; and (3) the severity of Plaintiff's alleged injuries were inconsistent with her ability to walk over a mile to a hospital immediately after the incident. In sum, the Jury's verdict was not a miscarriage of justice.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a new trial is DENIED .

**SO ORDERED.**

/s/

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
August 25, 2026